**<u>IN THE UNITED STATES BANKRUPTCY COURT</u>**
**<u>FOR THE MIDDLE DISTRICT OF PENNSYLVANIA</u>**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 11 |
| TIMBERVIEW VETERINARY CLINIC, INC., | : | |
| | : | CASE NO. 1-14-02535 |
| Debtor in Possession | : | |

**DISCLOSURE STATEMENT REGARDING**
**PLAN OF REORGANIZATION OF TIMBERVIEW VETERINARY, INC.**

**Henry W. Van Eck, Esquire**
Mette, Evans & Woodside
3401 North Front Street
Harrisburg, PA 17110
(717) 231-5286
*Counsel for Timberview Veterinary, Inc.*

1

*Table of Contents*

I.    INTRODUCTION ...................................................................................................4
      A.    Purpose of This Document ...........................................................................4
      B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing
            1.    Time and Place of the Hearing to Confirm the Plan .......................4
            2.    Deadline For Voting to Accept or Reject the Plan ..........................4
            3.    Deadline For Objecting to the Confirmation of the Plan .................5
            4.    Identity of Person to Contact for More Information .......................5
      C.    Disclaimer ...................................................................................................5

II.   BACKGROUND.....................................................................................................5
      A.    Description and History of the Debtor's Business .........................................5
      B.    Insiders of the Debtor ..................................................................................5
      C.    Management of the Debtor Before and During the Bankruptcy ....................6
      D.    Events Leading to Chapter 11 Filing ...........................................................6
      E.    Significant Events During the Bankruptcy Case ...........................................6
            1.    Restructured Workforce - Waynesboro.............................................6
            2.    Negotiations with Primary Creditors.................................................7
            3.    Applications to Employ .....................................................................7
            4.    Claims Bar Date ...............................................................................7
      F.    Projected Recovery of Avoidable Transfers .................................................7
      G.    Claims Objections ........................................................................................7
      H.    Current and Historical Financial Conditions ...............................................7

III.  SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND
      EQUITY INTERESTS ..........................................................................................8
      A.    What is the Purpose of the Plan of Reorganization? ....................................8
      B.    Unclassified Claims......................................................................................8
            1.    Administrative Expenses....................................................................8
            2.    Priority Tax Claims ...........................................................................9
      C.    Classes of Claims and Equity Interests .......................................................9
            1.    Classes of Secured Claims ................................................................9
            2.    Classes of Priority Unsecured Claims ...............................................9
            3.    Classes of General Unsecured Claims ...............................................10
            4.    Class of Equity Interest Holders.......................................................10
      D.    Means of Implementing the Plan ..................................................................10
            1.    Source of Payments...........................................................................10
            2.    Post-confirmation Management .........................................................10
      E.    Risk Factors ................................................................................................11
      F.    Executory Contracts and Unexpired Leases .................................................11
      G.    Tax Consequences of Plan............................................................................11
            1.    Federal Income Tax Consequences to Holders of Claims and Interests .........12
            2.    Federal Income Tax Consequences to Debtor....................................13

IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES.....................................14
      A.    Who May Vote or Object ............................................................................14
            1.    What Is an Allowed Claim or an Allowed Equity Interest? ..................14

2

2.      What Is an Impaired Claim or Impaired Equity Interest? ....................................15
3.      Who is *Not* Entitled to Vote ..................................................15
4.      Who Can Vote in More Than One Class ..................................................15
B.      Votes Necessary to Confirm the Plan ..................................................15
1.      Votes Necessary for a Class to Accept the Plan ..................................................16
2.      Treatment of Nonaccepting Classes ..................................................16
C.      Liquidation Analysis..................................................16
D.      Feasibility ..................................................16
1.      Ability to Initially Fund Plan ..................................................16
2.      Ability to Make Future Plan Payments And Operate Without Further
        Reorganization ..................................................16

V.      EFFECT OF CONFIRMATION OF PLAN ..................................................17
A.      Discharge of Debtor ..................................................17
B.      Confirmation..................................................17
B.      Modification of Plan ..................................................17
C.      Final Decree..................................................17

VI.     DISTRIBUTION PROVISIONS ..................................................17
A.      Amendment of Claims..................................................17
B.      Transmittal of Distributed Property..................................................18
C.      Distribution Agent ..................................................18
D.      Disputed Payments ..................................................18
E.      Withholding of Taxes ..................................................18
F.      Procedure for Making Payments ..................................................18

VII.    OTHER PROVISIONS..................................................19
A.      Retention and Enforcement of Claims..................................................19
B.      Fee Requests of Professional Persons..................................................19
C.      Objections to Claims..................................................19
D.      Provisions of Confirmation Order ..................................................19
E.      Pre-Payment of Claims Without Penalty..................................................19
F.      Cram-Down ..................................................19

3

# I.     INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of Timberview Veterinary, Inc. (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization of Timberview Veterinary, Inc. (the "Plan") filed by Timberview Veterinary, Inc. on **March 27, 2015**. A full copy of the Plan is attached to this Disclosure Statement as **Exhibit A**. Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

The proposed distributions under the Plan are discussed at pages **8-10** of this Disclosure Statement. General unsecured creditors are classified in Class 3, and will receive a distribution of 5% of their allowed claims. Such distributions shall be payable through monthly plan payments. The Plan Payments shall be payable in quarterly pro-rata cash distributions from future revenues beginning on the Effective Date of this Plan and ending 60 months thereafter.

## A.     Purpose of This Document

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the Plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why the Proponent believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

## B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

### 1.     Time and Place of the Hearing to Confirm the Plan

The hearing at which the Court will determine whether to confirm the Plan will take place on _____ , at _____, in the Bankruptcy Courtroom located on the third floor of the Ronald Reagan Federal Building, 228 Walnut Street, Harrisburg, Pennsylvania 17108.

4

### 2. Deadline For Voting to Accept or Reject the Plan

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to the Voting Agent, Henry W. Van Eck, Esquire, 3401 North Front Street, Harrisburg, Pennsylvania 17110. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ or it will not be counted.

### 3. Deadline For Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon Henry W. Van Eck, Esquire, 3401 North Front Street, Harrisburg, Pennsylvania 17110 by _____.

### 4. Identity of Person to Contact for More Information

If you want additional information about the Plan, you should contact Henry W. Van Eck, Esquire, 3401 North Front Street, Harrisburg, Pennsylvania 17110.

### C. Disclaimer

*The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

## II. BACKGROUND

### A. Description and History of the Debtor's Business

The Debtor is a Pennsylvania business corporation. Debtor is the operator of a veterinary hospital with a principal place of business at 106 West Cabin Hollow Road, Dillsburg, Pennsylvania 17019.

### B. Insiders of the Debtor

The following represents a list of insiders as defined in §101(31) of the United States Bankruptcy Code (the "Code") and their relationship to the Debtor. The compensation paid by the Debtor to each person during the two years prior to the commencement of the Debtor's bankruptcy case, as well as compensation paid during the pendency of this chapter 11 case:

| Name | Relationship | Compensation (Pre) | Compensation (Post) |
|---|---|---|---|
| Sara E. Mummert | Officer, Director, Shareholder | $46,218 | $76,500 |
| Mike Mummert | Officer, Director, Shareholder | $21,800 | $26,500 |

5

### C. Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were as follows:

| Name | Position |
|------|----------|
| Sara E. Mummert | President/Director/Shareholder |
| Mike Mummert | Manager |

The Managers of the Debtor during the Debtor's chapter 11 case have been:

| Name | Position |
|------|----------|
| Sara E. Mummert | President/Director/Shareholder |
| Mike Mummert | Manager |

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Managers"), will be:

| Name | Position |
|------|----------|
| Sara E. Mummert | President/Director/Shareholder |
| Mike Mummert | Manager |

The responsibilities and compensation of these Post Confirmation Managers are described in Section III.D. of this Disclosure Statement.

### D. Events Leading to Chapter 11 Filing

The Debtor was formed in 2004 for the purpose of purchasing and operating an existing veterinary client with one location 2054 Old York Road, Dillsburg, Pennsylvania. Funding for the purchase was provided by M & T (the "Purchase Money Loan"). The Debtor operated for most of the next 6 years without incident, until 2010 when it purchased and moved into its current location at 106 West Cabin Hollow Road, Dillsburg, Pennsylvania. Revenues increased, but not enough to pay the increased rental obligations resulting from the new location. The Debtor attempted to increase its revenues through advertising. Notwithstanding these efforts, the increased expense of the new location caused the Debtor to experience great difficulty meeting its obligations to pre-petition lenders and trade vendors. Faced with monthly obligations that were too high to maintain with its revenues, the Debtor filed its voluntary chapter 11 petition on May 30, 2014.

### E. Significant Events During the Bankruptcy Case

#### 1. Restructured Workforce

Significant events that occurred during this bankruptcy case include the decision to remove a full time veterinarian and other staff members from the payroll. This decision has allowed the principal of the Debtor, Sara E. Mummert to become more involved in the operations of the clinic and supervision of its employees. It has also significantly reduced the payroll obligations that will allow it to operate without a loss for the first time since before the date of the Petition.

6

### 2. Negotiations with Primary Creditors

Since filing the Petition, the Debtor has been in close communication and negotiation with its largest creditor, the Internal Revenue Service. These negotiations have allowed the Debtor to secure certain agreements with the IRS for the continued use of cash collateral, which terms are incorporated into the Plan. These agreements will allow the Debtor to continue operations and service its debt at a reasonable monthly rate, thereby increasing its monthly cash flow and alleviating the circumstance that caused it to file its Petition on May 30, 2014.

### 3. Applications to Employ

The Debtor filed an application to employee Mette, Evans & Woodside as it is bankruptcy counsel on May 30, 2014. The Court granted that application on July 1, 2014. Mette, Evans & Woodside has been the exclusive bankruptcy counsel to the Debtor since the date of the petition.

The Debtor filed an application to employee John P. Weidman, CPA as its accountant on June 11, 2014. The Court granted that application on September 19, 2014. John P. Weidman has served as accountant to the Debtor since the date of the petition.

### 4. Claims Bar Date

A Motion to Set a Claims Bar Date was filed by the Debtor on November 5, 2014. On November 6, 2014, the Court entered an Order granting the motion to set a claims bar date and establishing December 5, 2014 as the final day upon which non-governmental entities were entitled to file a proof of claim, and December 15, 2014 as the final day upon which governmental entities were entitled to file a proof of claim.

### F. Projected Recovery of Avoidable Transfers

The Debtor has not yet completed its investigation with regard to pre-petition transactions. If you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtor may seek to avoid such transfer.

### G. Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

### H. Current and Historical Financial Conditions

The identity and liquidation value of the estate's assets are listed in **Exhibit B**. The valuation is based upon an appraisal conducted by Kerry Pae Auctioneers on June 9, 2014.

There were no financial statements relative to the Debtor issued before bankruptcy.

The most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case is set forth in **Exhibit C**.

7

### III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

#### A. What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

#### B. Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

##### 1. Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0.00 | Unimpaired. Payment in full of allowed amount of such claim on the effective date of the Plan, or as otherwise agreed. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $0.00 | Unimpaired. Payment in full of allowed amount of such claim on the effective date of the Plan, or as otherwise agreed. |
| Professional Fees, as approved by the Court. | $15,000.00 | Unimpaired. Payment in full of allowed amount of such claim (or as otherwise Agreed) on the effective date of the Plan, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Clerk's Office Fees | $0.00 | Unimpaired. Payment in full of allowed amount of such claim on the effective date of the Plan. |
| Other administrative expenses | $0.00 | Unimpaired. Payment in full of allowed amount of such claim on the effective date of the Plan, or according to separate written agreement |
| Office of the U.S. Trustee Fees | $1,975.00 | Unimpaired. Paid in full on the effective date of the Plan |
| TOTAL | $16,975.00 | |

8

### 2.    Priority Tax Claims

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| NAME | DESCRIPTION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNTS | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| Internal Revenue Service | Priority Tax Claim – Employer | Payment in full, in cash, with interest at 3.25% in 60 equal monthly installments of $2,803.47 beginning on the Effective Date and ending on the 60th month thereafter. | No | $155,059.01 | 100% |
| Pennsylvania Department of Revenue | Priority Tax Claim – Sales & Use | Payment in full, in cash, with interest at 3.25% in 60 equal monthly installments of $244.41 beginning on the Effective Date and ending on the 60th month thereafter. | No | $13,518.10 | 100% |

## C.    Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1.    Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| CLASS | DESCRIPTION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNTS | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| 2 | Secured Claim of Internal Revenue Service | Unimpaired.  Payment in full, in cash, with interest at 3.25% in 60 equal monthly installments of $468.55 beginning on the Effective Date and ending on the 60th month thereafter. | No | $25,915.28 | 100% |

### 2.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment.

9

| CLASS | DESCRIPTION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNTS | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| 1 | Priority Non - Tax Claims | Unimpaired. Payment in full of allowed amount of such claim on the effective date of the Plan, or as otherwise agreed. | Yes | $0.00 | 100% |

### 3. Classes of General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 4, which contains general unsecured claims against the Debtor:

| CLASS | DESCRIPTION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNTS | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| 3 | General Unsecured Claims | Impaired; Payment of up to 5% of allowed claims payable in quarterly pro-rata cash distributions from future revenues beginning on the Effective Date of this Plan as defined in Article VIII, or the date upon which any such claim is allowed by a final non-appealable order, and ending 60 months thereafter. | Yes | $324,206.00 | 5% |

### 4. Class of Equity Interest Holders

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| CLASS | DESCRIPTION | TREATMENT | ENTITLED TO VOTE | ESTIMATED AMOUNTS | ESTIMATED RECOVERY |
|---|---|---|---|---|---|
| 4 | Equity Holders Interests | Impaired. All Interests will be cancelled as of the Effective Date. Upon cancelation, new stock equal to the pre-petition stock will issue to the New Equity Owner in exchange for the sum of $1.00. | No | N/A | 0% |

### D. Means of Implementing the Plan

#### 1. Source of Payments

Payments and distributions under the Plan will be funded by the revenues and profits generated from the operation of reorganized Timberview Veterinary, Inc.

## 2. Post-confirmation Management

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider | Position | Compensation |
|------|-------------|---------|----------|--------------|
| Sara E. Mummert | Current President | Y | President | $90,000.00 |

## E. Risk Factors

The proposed Plan has the following risks:

The Plan proposes payments over a period of 5 years. There are risks inherent in doing business and such risks are always present in a Plan dependent upon a future stream of income. The risks include the probability of loss inherent in any organization's operations and environment, such as competition and adverse economic conditions, that may impair its ability to provide returns on investment. Although the Plan has minimized these risks by eliminating unnecessary expenses and maximizing its potential for profitability, there is no guarantee against the veterinary/animal care profession suffering further constriction thereby limiting the future income stream of Timberview Veterinary, Inc.

## F. Executory Contracts and Unexpired Leases

The Plan, in Section 6.01, lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. Section 6.01 also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Exhibit 6.01 of the Plan will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

Proofs of all Claims arising out of the rejection of an executory contract or an unexpired lease pursuant to the Plan shall be filed not later than thirty (30) days after the date on which notice of the occurrence of the Confirmation Date has been served. Any such Claims covered by the preceding sentence not filed within such time shall be forever barred from assertion against the Debtor, its Estate, and its respective properties and interests.

11

### G. Tax Consequences of Plan

THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE PLAN AND THE OWNERSHIP AND DISPOSITION OF PROCEEDS FROM CLAIMS INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL OR FOREIGN (NON-US) TAX LAWS AND OF ANY CHANGE IN APPLICABLE TAX LAWS.

The following discussion addresses certain United States Federal income tax consequences of the consummation of the Plan. This discussion is based upon the United States Tax Code, as amended, existing and proposed regulations thereunder, current administrative rulings, and judicial decisions as in effect on the date hereof, all of which are subject to change, possibly retroactively. No rulings or determinations by the Internal Revenue Service have been obtained or sought by the Plan Proponent with respect to the Plan. An opinion of counsel has not been obtained with respect to the tax aspects of the Plan. This discussion does not purport to address the federal income tax consequences of the Plan to particular classes of taxpayers (such as foreign persons, s corporations, mutual funds, small business investment companies, regulated investment companies, broker-dealers, insurance companies, tax-exempt organizations and financial institutions) or the state, local or foreign income and other tax consequences of the Plan.

IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED TO OR WRITTEN TO BE USED, AND CANNOT BE USED, BY SUCH HOLDERS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING OF THE PLAN; AND (C) SUCH HOLDERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

### 1. Federal Income Tax Consequences to Holders of Claims and Interests

A Holder of an Allowed Claim or Equity Interest will generally recognize ordinary income to the extent that the amount of cash or property received (or to be received) under the Plan is attributable to interest that accrued on a claim but was not previously paid by the Debtor or included in income by the Holder of the allowed claim or interest. A Holder of an Allowed Claim or Equity Interest will generally recognize gain or loss equal to the difference between the Holder's adjusted basis in its claim and the amount realized by the Holder upon consummation of the Plan that is not attributable to accrued but unpaid interest. The amount realized will equal the sum of cash and the fair market value of other consideration received (or to be received).

The character of any gain or loss that is recognized will depend upon a number of factors, including the status of the Holder, the nature of the Claim or Equity Interest in its hands, whether the Claim was purchased at a discount, whether and to what extent the Holder has previously claimed a bad debt deduction with respect to the Claim, and the Holder's holding period of the Claim or Equity Interest. If the Claim or Equity Interest in the Holder's hands is a capital asset, the gain or loss

12

realized will generally be characterized as a capital gain or loss. Such gain or loss will constitute long-term capital gain or loss if the Holder held such Claim or Equity Interest for longer than one year or short-term capital gain or loss if the Holder held such Claim or Equity Interest for one year or less. If the Holder realizes a capital loss, the Holder's deduction of the loss may be subject to limitation.

A Holder of an Allowed Claim or Equity Interest who receives, in respect of its claim, an amount that is less than its tax basis in such claim or equity interest may be entitled to a bad debt deduction under section 166(a) of the Tax Code or a worthless securities deduction under section 165(g) of the Tax Code. The rules governing the character, timing, and amount of these deductions depend upon the facts and circumstances of the Holder, the obligor, and the instrument with respect to which a deduction is claimed. Accordingly, Holders are urged to consult their tax advisors with respect to their ability to take such a deduction if either: (1) the Holder is a corporation; or (2) the Claim or Equity Interest constituted (a) a debt created or acquired (as the case may be) in connection with a trade or business of the Holder or (b) a debt the loss from the worthlessness of which is incurred in the Holder's trade or business. A Holder that has previously recognized a loss or deduction in respect of its claim or equity interest may be required to include in its gross income (as ordinary income) any amounts received under the Plan to the extent such amounts exceed the Holder's adjusted basis in such Claim or Equity Interest.

Holders of Claims who were not previously required to include any accrued but unpaid interest in their gross income on a Claim may be treated as receiving taxable interest income to the extent any consideration they receive under the Plan is allocable to such interest. Holders previously required to include in their gross income any accrued but unpaid interest on a claim may be entitled to recognize a deductible loss to the extent such interest is not satisfied under the Plan. Under the Plan, to the extent that any Allowed Claim entitled to a Distribution is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the Distribution exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

A Holder of a Claim constituting any installment obligation for tax purposes may be required to currently recognize any gain remaining with respect to such obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of section 453b of the Tax Code.

Whether the Holder of Claims or Equity Interests will recognize a loss, a deduction for worthless securities or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the Holder and its Claims or Equity Interests. Accordingly, Holders of Claims and Equity Interests should consult their own tax advisors.

Under backup withholding rules, a Holder of an Allowed Claim may be subject to backup withholding with respect to payments made pursuant to the Plan unless such Holder (i) is a corporation or is otherwise exempt from backup withholding and, when required, demonstrates this fact or (ii) provides a correct taxpayer identification and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding because of failure to report all dividend and interest income. Any amount withheld under these rules will be credited against the Holder's federal income tax liability. Holders of Claims may be required

to establish an exemption from backup withholding or to make arrangements with regard to payment thereof.

## 2.    Federal Income Tax Consequences to Debtor

The Debtor may realize cancellation of debt income to the extent of any debt forgiveness. To the extent there is cancellation of debt income, the same will reduce the Federal tax attributes of the Debtor's operating loss carry-forwards and the tax bases of their assets; if cancellation of debt income exceeds these attributes, it will be exempt from tax. As of April 23, 2013 the Debtor had no federal net operating loss carry forwards.  Pursuant to the Plan, all of the Debtor's remaining assets other than those sold or abandoned prior to the Effective Date will remain with the Debtor.

It is believed that the Debtor's retention of its assets pursuant to the Plan will not constitute a taxable disposition of such assets. It is not known at the present time whether the retention of the Debtor's assets will result in any gain to the Debtor.  If such a retention results in gain, it is not known at the present time whether the Debtor will have sufficient losses or loss carry forwards to offset that gain. If the retention results in gain and the Debtor does not have losses or loss carry forwards to offset that gain, the retention of such assets will result in federal income tax liability.

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

14

In this case, the Plan Proponent believes that certain classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent further believes that other classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

### 1. What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline for filing a proof of claim in this case was December 5, 2014.*

### 2. What Is an Impaired Claim or Impaired Equity Interest?

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is *Not* Entitled to Vote

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code;

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and

- administrative expenses.

*Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.*

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

### 1. Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

The "fair and equitable" test generally prohibits old equity holders from receiving or retaining property under a chapter 11 plan on account of their prior interests if (i) a senior class of unsecured claims rejects the plan, and (ii) the members of that senior class receive less than full payment on their claims. This is typically referred to as the "Absolute Priority Rule". However, there is an exception to the Absolute Priority Rule pursuant to which equity holders might retain/obtain interests in the reorganized debtor in return for contributing "new value" toward the reorganization effort. This is typically referred to as the "New Value Exception". Under the New Value Exception, an old equity holder may obtain or retain an interest in the reorganized debtor if he contributes new capital in money or money's worth, reasonably equivalent to the property's value, and necessary for successful reorganization. Only the Court can determine if a New Value Exception exists.

In this case, the Plan allows the Class 4 Equity Holder to receive new stock in the Debtor in exchange for $1.00 (the "New Stock"). The Class 4 Equity Holder's Interest is junior to Class 3 General Unsecured Claims. Accordingly, in order for the Plan to be confirmed without violating the Absolute Priority Rule, the Debtor must (1) secure sufficient votes from Class 3 General Unsecured Claims to cause them to accept the plan, or (2) the Debtor must demonstrate that the Class 4 Equity

Holder is contributing new capital in money or money's worth, reasonably equivalent to the value of the New Stock, and that it is necessary for a successful reorganization.

If the Debtor in this case does not obtain sufficient votes from the Class 3 General Unsecured Claims to cause them to accept the Plan, the Debtor will demonstrate that the money offered for purchase of the New Stock is reasonably equivalent to its value, and that it is necessary for a successful reorganization. The Debtor will demonstrate that the money offered for purchase of the New Stock is reasonably equivalent to its value by obtaining and presenting an expert business valuation report supporting the value offered (the "Valuation Report"). In the event that the Valuation Report demonstrates that additional money or money's worth is required, then the Debtor will require additional money or money's worth to be placed into the estate in exchange for the New Stock. Such additional funds may be considered new value.

The money offered in exchange for the New Stock is necessary for the successful reorganization of the Debtor because it will facilitate the continued operations of the business which will fund the Plan. The money offered in exchange for the New Stock will facilitate the continued operations of the business because the business will likely fail without the continued involvement of the old equity owner, and the old equity owner will have no incentive to continue operating the business unless he has a stake in the equity. If the business does not continue to operate, then there will be no future revenue or income to fund the Plan. The Debtor estimates that $211,000.00 from the future revenues and income of the Debtor will be used to fund the Plan. These funds are critical to the successful reorganization of the Debtor Accordingly, the money offered in exchange for the New Stock is necessary for the successful reorganization of the Debtor.

Alternatively, in the event that the Debtor does not receive sufficient votes from the Class 3 General Unsecured Creditors, the Debtor may file an Amended Plan or provide a further analysis so as to cause unsecured creditors to vote in favor of the Plan. Such Amended Plan or further analysis will incorporate the Valuation Report and its finding of value. The Amended Plan or further analysis will demonstrate that the money or money's worth offered will be necessary for the successful reorganization of the Debtor.

Notwithstanding the foregoing, the Debtor believes that the current offer to the unsecured creditors made in the Plan is realistic based upon its liquidation values and based upon its cash flow.

With respect to the secured creditors in this case, the cram down provisions of Section 1129(b) of the Code could be utilized to cause confirmation of the Plan. Each secured creditor is, under the terms of the Plan, retaining its respective lien securing its Claim until paid the amount proposed to it under the Plan, and is receiving on account of such secured Claim, payments totaling at least the allowed amount of the secured Claim. These payments are of a value equal to the amount of the collateral held by each respective creditor. The secured creditor is contained in Class 2. The issues which might affect confirmation as to this creditor might be a determination as to the value of the secured creditor's secured Claim and the terms of repayment thereof, including interest rates and the time for payment.

The Debtor, nonetheless, believes that the Plan does meet the requirements of Section 1129(b) as to the secured creditors. Thus, the Plan can be confirmed even if the secured Claim accepts the Plan so long as one impaired class of Claims does accept the Plan as set forth above.

*You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.*

**C**. **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as **Exhibit D**.

**D.** **Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**1.** **Ability to Initially Fund Plan**

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as **Exhibit E**.

**2.** **Ability to Make Future Plan Payments And Operate Without Further Reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in **Exhibit F**.

The Plan Proponent's financial projections show that the Debtor will have an average annual average cash flow, after paying operating expenses, of $90,805.00. The final Plan payment is expected to be paid on or about May 31, 2020. The expense assumptions were based upon historical averages achieved or actual costs. Revenues were determined based upon past history and current market conditions.

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

**V.** **EFFECT OF CONFIRMATION OF PLAN**

**A.** **Discharge of Debtor**

<u>Discharge</u>. On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in

18

accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, or (iii) of a kind specified in § 1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

## B.    Confirmation

Effect of Confirmation.  Except as otherwise expressly provided in the Plan, pursuant to sections 524 and 1141 of the Bankruptcy Code, on and after the Confirmation Date, the terms of this Plan shall bind all Holders of Claims, whether or not they accept this Plan.

Injunction.  Except as otherwise expressly provided in the Plan, the Confirmation Order will provide that all Persons who have held, hold or may hold Claims are, with respect to any such Claim, permanently enjoined on and after the Effective Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Estate or any of the Estate's Property; (b) enforcing, levying, attaching (including, without limitation, any pre judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Estate or any of the Estate's Property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Estate or any of the Estate's Property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Estate or any of the Estate's Property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

Limitation of Liability.  The Debtor, together with its advisors, accountants, attorneys and representatives (collectively, the "Exculpated Parties"), will neither have nor incur and is hereby released from any liability for any action taken or omitted to be taken after the Petition Date in connection with or related to the Bankruptcy Case or the formulation, preparation, dissemination, implementation, Confirmation or consummation of this Plan, the Disclosure Statement, or any agreement created or entered into in connection with this Plan; provided, however, that this limitation will not affect or modify the obligations created under this Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under this Plan and shall not release any action (or inaction) constituting willful misconduct or fraud (in each case subject to determination of such by final order of a court of competent jurisdiction); provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan and such reasonable reliance shall form an absolute defense to any such claim, cause of action, or liability.  Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code.

Continuation of Injunctions and Stays.  Unless otherwise provided, all injunctions or stays: (a) ordered in the Chapter 11 Case pursuant to sections 105(a) or 362 of the Bankruptcy Code or

19

otherwise, and (b) in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 case is closed.

### B. Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

### C. Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI. DISTRIBUTION PROVISIONS

### A. Amendment of Claims

<u>Amendment of Claims</u>. A claim may be amended prior to the Confirmation Date only as agreed upon by the Debtor and the holder of such Claim or as otherwise permitted by the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules or applicable law. After the Confirmation date, a Claim may be amended to decrease, but not increase, the amount thereof.

### B. Transmittal of Distributed Property

<u>Transmittal of Distributed Property</u>. Except as may otherwise be agreed to by the holder of a particular Claim, any property to which such holder shall become entitled under the provisions of this Plan, shall be delivered to such holder by regular mail, postage prepaid, in an envelope addressed to such holder as he or his authorized agent may direct in a request filed, on or before the Effective Date, with the Bankruptcy Court, but if no such request is filed, to the address shown on the Debtor's Schedules, or, if a different address is stated in a proof of claim duly filed by such holder, to such address. In all cases where delivery or distribution of any property is effectuated by mail, the date of delivery or distribution shall be the date of mailing. Property delivered in accordance with this section will be deemed delivered to the holder regardless of whether such property is actually received by such holder.

### C. Distribution Agent

<u>Distribution Agent</u>. A qualified Distribution Agent shall be selected by the Debtor and approved by the Court no later than 10 days prior to the Confirmation Hearing on this Plan. The Distribution Agent shall be entitled to reasonable compensation from the Plan payments for services rendered pursuant to his appointment. The Distribution Agent shall be entitled to compensation without approval by the Bankruptcy Court, provided that the Distribution Agent serves a copy of the detailed invoice describing the services for which compensation is sought upon the Office of the

20

United States Trustee and said party receiving service has not moved for review of such compensation by the Bankruptcy Court within ten (10) days of such service.

### D. Disputed Payments

Disputed Payments. In the event that any dispute arises as to the right of any holder of an Allowed Claim to receive any payment or distribution to be made under the Plan, the Debtor may, in lieu of making such payment or distribution to such holder, pay such amount or make such distribution into an escrow account until the disposition thereof is determined by order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

### E. Withholding of Taxes

Withholding of Taxes. The Debtor shall not be required to deduct any federal, state or local withholding taxes from any payments made with respect to Allowed Claims.

### F. Procedure for Making Payments

Procedure for Making Payments. All payments to the holders of Allowed Claims shall be made as set forth above in section VI. B. (Transmittal of Distributed Property) above. In the event any payments are returned as undeliverable or if the payment check has not been negotiated for period of sixty (60) days after mailing, the Debtor shall make reasonable efforts to ascertain the current address for the holder of the Allowed Claim for period of no fewer one hundred twenty (120) days after payment was originally sent. Thereafter, if the current address of the holder has not been ascertained, or if the payment check has not been negotiated, within such one hundred twenty (120) day period, the payment check shall be void, and the funds evidenced by the check shall be forfeit.

## VII. OTHER PROVISIONS

### A. Retention and Enforcement of Claims.

Pursuant to Section 1123(b)(3) of the Bankruptcy Code, the Debtor, its successors and assigns, shall retain and may enforce its Causes of Action and any and all claims of the Debtor and/or the Debtor-in-Possession.

### B. Fee Requests of Professional Persons.

Any and all Professional Persons retained or requesting compensation pursuant to Sections 327, 328, 330, 331 and 503(b) of the Bankruptcy Code for professional services performed and expenses incurred before the Confirmation Date shall file a Fee Request for final allowance of compensation and reimbursement of expenses with the Bankruptcy Court not later than twenty (20) days after the Confirmation Date. Objections to Fee Requests shall be filed, if at all, within twenty (20) days after the Fee Request is filed with the Bankruptcy Court. Not less than ten (10) days before the Confirmation Date, each Professional Person shall deliver to the Debtor by written notice and estimate of the fees and expenses for which such Professional Person shall apply in a Fee Request. Professional Persons shall not be required to file Fee Requests for professional services rendered and expenses incurred after the Confirmation Date.

## C. Objections to Claims.

Objections to the validity and/or amount of Claims shall be filed by the Debtor with the Bankruptcy Court on or before the tenth (10th) day following approval of the Debtor's Disclosure Statement. The Debtor shall serve a copy of such objection upon the holder of the alleged claim to which it pertains.

## D. Provisions of Confirmation Order.

The Confirmation Order shall contain provisions (i) authorizing the Debtor to take or cause to be taken all actions necessary to enable it to effectively implement all of the provisions of the Plan; (ii) making the provisions of the Confirmation Order non-severable and mutually dependent; and (iii) that are in a form and substance reasonably acceptable to the Debtor.

## E. Pre-Payment of Claims Without Penalty.

The Debtor reserves the right to prepay any or all of the payments set forth in the Plan without penalty.

## F. Cram-Down

If all of the applicable requirements for confirmation of the Plan are met as set forth in section 1129(A) of the Bankruptcy Code except subsection (8) thereof, the Debtor may request that the bankruptcy court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of subsection (8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting impaired Class or Classes of Claims or Interests.

Respectfully submitted,

TIMBERVIEW VETERINARY, INC.

*s/Sara E. Mummert*

Date:   March 27, 2015                    By:   _____
                                                Sara E. Mummert, President

Counsel for Debtor:
*/s/ Henry W. Van Eck*
Henry W. Van Eck, Esquire
METTE, EVANS & WOODSIDE
3401 North Front Street
Harrisburg, PA 17110
(717) 232-5000
***hwvaneck@mette.com***